UNITED STATES DISTRICT COURT                    **JUDGE KARAS**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MISTER SPROUT, INC.

                    Petitioner          PETITION

        -against-
                                        Civil Action No.
WILLIAMS FARMS PRODUCE SALES, INC.
                    Respondent          Plaintiff Demands a Jury Trial
-------------------------------------------------------X

      Petitioner Mister Sprout, Inc. ("Sprout") by its attorney LINDA STRUMPF, Esq., as

and for its Petition herein alleges:

      1.  That it was the Respondent in a reparation proceeding under the Perishable

Agricultural Commodities Act, 1930, as amended (7 U.S.C. Sec. 499 et seq.), namely

Williams Farms Produce Sales, Inc. v. Mister Sprout, Inc., PACA E-08-520, Docket No. R-

09-082, dated July 15, 2010, before the Secretary of Agriculture, United States Department

of Agriculture, by William G. Jenson, Judicial Officer. Sprout has its principal place of

business at B266 N.Y.C. Terminal Market, Bronx, New York, within the jurisdiction of this

Court.

      2.  A timely complaint was filed in which Williams Farms Produce Sales, Inc.

("Williams") sought a reparation award against Sprout in the total amount of $30,880.00 in

connection with the sale and shipment of two truckloads of tomatoes shipped in the course of

interstate commerce.

      3.  A copy of the complaint was served upon Sprout, who filed an answer thereto

denying the material allegations of the complaint.

4.  The shortened method of procedure provided in section 47.20 of the Rules of Practice (7. C.F.R. § 47.20) was applied.  Pursuant to this procedure, the pleadings of the parties, and  the U.S.D.A.'s report of investigation were considered part of the evidence in the case. In addition, Williams filed an Opening Statement, Statement in Reply and a Brief, and Sprout filed an Answering Statement and a Brief.

5.  A Decision and Order was issued on July 15, 2010 awarding reparation to Williams in the amount of $30,880.00 with interest thereon at the rate of .31% per annum from August 1, 2008, plus the amount of $500.00 (the handling fee). (A copy of the Decision and Order is annexed hereto and made a part hereof as Exhibit A).

6.  The U.S.D.A. held that because the tomatoes were sold f.o.b., they applied additional allowances to the tolerances set forth in the U.S. Standards for Grades of Fresh Tomatoes.  The U.S.D.A. allowed 22 percent average defects, although the tomatoes were contracted to meet 85% U.S. No. 1.   Thus, although the USDA inspections on the loads disclosed average defects in excess of 15%, the Judicial Officer found that the loads met the grade contracted for in both shipments, and that Respondent failed to establish a breach of contract for both loads.

7.  The grounds on which Sprout relies that the Decision and Order of the U.S.D.A. should be overturned are that it is incorrect as to the facts and as to the law.

2

WHEREFORE, it is respectfully requested that the reparation order of the Secretary of Agriculture awarding $30,880.00 with interest thereon at the rate of .31% per annum from August 1, 2008 plus the amount of $500.00 be reversed in its entirety; that Sprout be awarded the costs, disbursements and attorney's fees of this action, together with such other and further relief as is just and proper.

Dated: August 9, 2010
      South Salem, NY

LINDA STRUMPF, ESQ. 2948
Attorney for Petitioner
2 West Road
South Salem, NY 10590
(212) 566-6800

TO:   Williams Farms Produce Sales, Inc
     7622 Ashton Road
     Islandton, South Carolina 29929-2709

  **Agricultural**
**Marketing**
**Service**

1400 Independence Avenue, SW.
Room 2095-S, STOP 0242
Washington, D.C. 20250-0242

July 15, 2010

In reply refer to:
File PACA E-08-520
Docket R-09-082

Linda Strumpf
244 Colonial Road
New Canaan, CT 06840

Dear Sir/Madam:

Re: Williams Farms Produce Sales, Inc. v. Mister Sprout, Inc.

Enclosed is a copy of the order issued on July 15, 2010, in the above-entitled case under the Perishable Agricultural Commodities Act (PACA).

Unless we are advised of payment of the order or a petition is submitted or an appeal was filed in the United States District Court, the order becomes final on August 14, 2010. If the order becomes final and it is not paid, sanctions will be automatically imposed against your client's business.

If your client has an active license, it will be automatically suspended effective close of business on August 20, 2010, in accordance with the provisions of section 7(c) and (d) of the Act, as amended. The suspension will continue in effect until the order is paid (principal plus interest at the rate of 0.31 percent per annum from the interest date until paid plus the filing fee). If your client has an inactive license or is not licensed and the order becomes final, sanctions will be imposed against your client's business.

In addition to the license suspension or sanctions against your client's business, the individual proprietor, partners, members/managers (Limited Liability Company), officers, directors or holders of more than 10 percent of the stock of the business cannot be employed by or affiliated in any capacity with any other licensee under the Act for a period of two years without the approval of the Department and the posting of a suitable surety bond. Employment or affiliation with a PACA licensee, without the Department's approval, could result in an extension of the employment sanctions and an administrative action against the employing firm.

You can review your appeal or petition rights by referring to our website at **www.ams.usda.gov/paca** and clicking on the **PACA Statute** and **Complaint Rules of Practice** links. If you do not have access to the Internet or have questions regarding this matter, contact our office at (202) 720-6728 or by fax at (202) 690-2815.

Sincerely,

*Phyllis Hall, Acting*

John A. Koller
Director, Dispute Resolution Section
PACA Branch

Enclosure

cc: Mister Sprout, Inc.
    Eastern Region

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| Williams Farms Produce Sales, Inc., | ) | PACA Docket No. R-09-082 |
| | ) | |
| Complainant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Mister Sprout, Inc., | ) | |
| | ) | |
| Respondent | ) | Decision and Order |

## Preliminary Statement

This is a reparation proceeding under the Perishable Agricultural Commodities Act, 1930, as amended (7 U.S.C. § 499a *et seq.*), hereinafter referred to as the Act. A timely Complaint was filed with the Department, in which Complainant seeks a reparation award against Respondent in the amount of $30,880.00 in connection with two truckloads of tomatoes shipped in the course of interstate commerce.

Copies of the Report of Investigation prepared by the Department were served upon the parties. A copy of the Complaint was served upon the Respondent, which filed an Answer thereto, denying liability to Complainant.

Although the amount claimed in the Complaint exceeds $30,000.00, the parties waived oral hearing. Therefore, the documentary procedure provided in Section 47.20 of the Rules of Practice (7 CFR § 47.20) is applicable. Pursuant to this procedure, the verified pleadings of the parties are considered part of the evidence of the case, as is the Department's Report of Investigation (ROI). In addition, the parties were given the opportunity to file evidence in the form of verified statements and to file Briefs.

Complainant filed an Opening Statement and a Statement in Reply.  Respondent filed an

Answering Statement.  Both parties also submitted a Brief.

## Findings of Fact

1.      Complainant, Williams Farms Produce Sales, Inc., is a corporation whose post

office address is 7622 Ashton Road, Islandton, South Carolina, 29929-2709.  At the time

of the transactions involved herein, Complainant was licensed under the Act.

2.      Respondent, Mister Sprout, Inc., is a corporation whose post office address is B-

266 NYC Terminal Market, Bronx, New York, 10474.  At the time of the transactions

involved herein, Respondent was licensed under the Act.

3.      On or about June 28, 2008, Complainant, by oral contract, sold to Respondent,

and agreed to ship from loading point in the state of South Carolina, to Respondent, in

Bronx, New York, one truckload of 85 percent U.S. No. 1 5x6 tomatoes.  (ROI Ex. G3.)

Complainant issued invoice number 18243 billing Respondent for 1,600 25-lb. boxes of

5x6 tomatoes at $8.00 per carton, or $12,800.00, plus $1.65 per box, or $2,600.00, for a

handling and environmental charge, for a total invoice price of $15,440.00.  (ROI Ex.

A3.)

4.      On or about June 28, 2008, Complainant, by oral contract, sold to Respondent,

and agreed to ship from loading point in the state of South Carolina, to Respondent, in

Bronx, New York, one truckload of 85 percent U.S. No. 1 5x6 tomatoes.  (ROI Ex. G5.)

Complainant issued invoice number 18244 billing Respondent for 1,600 25-lb. boxes of

5x6 tomatoes at $8.00 per carton, or $12,800.00, plus $1.65 per box, or $2,600.00, for a

handling and environmental charge, for a total invoice price of $15,440.00.  (ROI Ex.

A2.)

5.     Following arrival of the tomatoes mentioned in Findings of Fact 3 and 4 at the place of business of Respondent in Bronx, New York, Respondent redirected the shipments to M & M Packaging Co., Inc. ("M & M Packaging"), in Goshen, New York, for the purpose of securing a prompt federal inspection.  (ROI Ex. F1.)

6.     On June 30, 2008, at 9:30 a.m., a USDA inspection was performed on the 1,600 cartons of 5x6 tomatoes billed on invoice 18243 at M & M Packaging, in Goshen, New York, the report of which disclosed the following, in pertinent part:

| OFFSIZE/DEFECTS: | AVERAGE DEFECTS | INCLUDING SERIOUS DAMAGE | INCLUDING VERY SERIOUS DAMAGE |
|---|---|---|---|
| QUALITY DEFECTS | 7% | 3% | -- |
| SUNKEN DISCOLORED AREAS | 4% | 1% | -- |
| SHOULDER BRUISING | 3% | 2% | -- |
| BRUISING | 1% | -- | -- |
| SKIN CHECKS | 1% | -- | -- |
| DECAY | <1% | <1% | <1% |
| TOTAL: | 17% | 7% | 1% |

| SIZE: | MEETS SIZE AS MARKED BASED ON FMO AT APPLICANT'S REQUEST, FAILS TO MEET MARKING REQUIREMENTS. |
|---|---|
| COLOR: | AVERAGE APPROX. 50% TURNING AND PINK, AVERAGE APPROX. 50% LIGHT RED AND RED. |
| GRADE: | FAILS TO GRADE U.S. NO. 1, ONLY ACCOUNT CONDITION, FAILS TO MEET MARKING REQUIREMENTS AS TO SIZE. |

(USDA Inspection Certificate M-151398, ROI Ex. H5.)

7.     On June 30, 2008, at 1:15 p.m., a USDA inspection was performed on the 1,600 cartons of 5x6 tomatoes billed on invoice 18244 at M & M Packaging, in Goshen, New York, the report of which disclosed the following, in pertinent part:

| OFFSIZE/DEFECTS: | AVERAGE DEFECTS | INCLUDING SERIOUS DAMAGE | INCLUDING VERY SERIOUS DAMAGE |
|---|---|---|---|
| QUALITY DEFECTS | 6% | 2% | 1% |
| SUNKEN DISCOLORED AREAS | 6% | 2% | 1% |
| SHOULDER BRUISES | 3% | 2% | -- |
| BRUISING | 1% | -- | -- |

| SKIN CHECKS | | 1% | -- | -- |
| DECAY | | 3% | 3% | 3% |
| | TOTAL: | 20% | 9% | 5%[1] |

| SIZE: | MEETS SIZE AS SPECIFIED, SIZE BASED ON FLORIDA MARKETING ORDER REQUIREMENT AT APPLICANT'S REQUEST.  FAILS TO MEET MARKING REQUIREMENTS AS TO SIZE. |
| COLOR: | AVERAGE APPROX. 55% LIGHT RED TO RED, AVERAGE APPROX. 40% TURNING TO PINK. |
| GRADE: | FAILS TO GRADE U.S. NO. 1, ONLY ACCOUNT CONDITION, FAILS TO MEET MARKING REQUIREMENTS AS TO SIZE. |

(USDA Inspection Certificate M-151398, ROI Ex. H6.)


8.     Following the inspections mentioned in Findings of Fact 6 and 7, the tomatoes

were reloaded and shipped back to the Hunts Point Terminal Market, in Bronx, New

York, where a USDA inspection was performed on the 1,600 cartons of 5x6 tomatoes

billed on invoice 18243, on July 2, 2008, at 7:35 a.m., the report of which disclosed the

following, in pertinent part:


| OFFSIZE/DEFECTS: | AVERAGE DEFECTS | INCLUDING SERIOUS DAMAGE | INCLUDING VERY SERIOUS DAMAGE |
|---|---|---|---|
| QUALITY DEFECTS | 5% | -- | -- |
| SUNKEN DISCOLORED AREAS | 5% | 1% | -- |
| BRUISES | 3% | 2% | -- |
| UNHEALED CUTS OR BROKEN SKINS | 1% | 1% | 1% |
| ABNORMAL COLORING | 1% | -- | -- |
| DECAY | 2% | 2% | 2% |
| TOTAL: | 17% | 6% | 3% |

| GRADE: | MEETS U.S. COMBINATION. |
| LOT DESC: | DIAMETER: 2-23/32 TO 3-21/32 INCHES STAGES OF DECAY: MANY ADVANCED, MANY MODERATE, SOME EARLY COLOR: AVERAGE APPROXIMATELY 95% LIGHT RED/RED TEMPERATURES(4): 52°F, 50°F, 52°F, 51°F |

(USDA Inspection Certificate T-011-0214-03146, ROI Ex. H7.)


---

[1] The total for this column was erroneously reported on the certificate as four percent.

9.     On July 3, 2008, at 6:20 a.m., an appeal inspection was performed on the 1,600 cartons of 5x6 tomatoes billed on invoice 18243, the report of which disclosed the following, in pertinent part:

| OFFSIZE/DEFECTS: | AVERAGE DEFECTS | INCLUDING SERIOUS DAMAGE | INCLUDING VERY SERIOUS DAMAGE |
|---|---|---|---|
| QUALITY DEFECTS | 4% | -- | -- |
| SUNKEN DISCOLORED AREAS | 7% | 2% | -- |
| BRUISES | 1% | -- | -- |
| DECAY | 4% | 4% | 4% |
| TOTAL: | 16% | 6% | 4% |

| GRADE: | FAILS TO GRADE U.S. NO. 1 ACCOUNT CONDITION, MEETS SIZE AS MARKED. |
|---|---|
| LOT DESC: | STAGES OF DECAY: APPROX. HALF ADVANCED, MANY EARLY, SOME MODERATE.<br>COLOR: AVERAGE APPROXIMATELY 5% TURNING/PINK, 90% LIGHT RED/RED<br>SIZE BASED ON FLORIDA 5X6 SIZE DESIGNATION AT APPLICANT'S REQUEST. |
| REMARKS: | THIS COVERS AN APPEAL INSPECTION ON THE ABOVE DESCRIBED LOT WHICH WAS PREVIOUSLY INSPECTED ON 7/2/08 AND REPORTED ON FEDERAL INSPECTION CERTIFICATE T-011-0214-03146 AND IS HEREBY REVERSED AS TO CONDITION. |

(USDA Inspection Certificate T-011-0186-02975, ROI Ex. H9.)

10.     On July 3, 2008, at 9:30 a.m., a formal review was conducted on the 1,600 cartons of 5x6 tomatoes billed on invoice 18243, the report of which disclosed the following, in pertinent part:

| OFFSIZE/DEFECTS: | AVERAGE DEFECTS | INCLUDING SERIOUS DAMAGE | INCLUDING VERY SERIOUS DAMAGE |
|---|---|---|---|
| QUALITY DEFECTS | 6% | 1% | -- |
| SUNKEN DISCOLORED AREAS | 10% | 2% | -- |
| BRUISES | 1% | -- | -- |
| DECAY | 3% | 3% | 3% |
| TOTAL: | 20% | 6% | 3% |

| GRADE: | FAILS TO GRADE U.S. NO. 1 ACCOUNT QUALITY. |
|---|---|
| LOT DESC: | STAGES OF DECAY: MOSTLY MODERATE. MANY EARLY, FEW ADVANCED COLOR: AVERAGE APPROXIMATELY 95% LIGHT RED/RED |

| REMARKS: | THIS CERTIFICATE COVERS A FORMAL REVIEW OF THE ABOVE LOT WHICH WAS PREVIOUSLY REPORTED ON APPEAL CERTIFICATE T-011-0186-02975 ON JULY 3, 2008 WHICH IS HEREBY REVERSED AS TO GRADE. |
|---|---|

(USDA Inspection Certificate T-037-0105-00922, ROI Ex. H8.)

11.     Respondent has not paid Complainant for the tomatoes billed on invoices 18243 and 18244.

12.     The informal complaint was filed on September 16, 2008, which is within nine months from the date the cause of action accrued.

## Conclusions

Complainant brings this action to recover the agreed purchase price for two truckloads of tomatoes sold and shipped to Respondent.  Complainant states Respondent accepted the tomatoes in compliance with the contracts of sale, but that it has since failed, neglected and refused to pay Complainant the agreed purchase prices thereof, which total $30,880.00. (Comp. ¶6) Respondent asserts in response that it is entitled to a reasonable adjustment to the agreed purchase price of the tomatoes because Complainant shipped tomatoes that were not 85 percent U.S. No. 1, as specified in the contracts of sale.[2] (Ans. ¶¶ 4, 6)

Initially, we note the record shows Respondent redirected the two loads of tomatoes in question from the contract destination in Bronx, New York, to M & M Packaging, in Goshen, New York, for the purpose of securing a federal inspection.  (ROI Ex. F1.)  Respondent also had the tomatoes unloaded into the warehouse of M & M Packaging prior to the inspection.  (ROI Ex. D2-D3.)  Both the diversion of the tomatoes to a location other than the destination specified in the contracts, and the unloading of the

_____

[2] This contract provision is evidenced by the confirmations of sale issued by the broker, Mike Puccia, which describe the tomatoes as "85%#1."  (ROI Ex. G3, G9.)

tomatoes at that location, are acts of dominion and control constituting acceptance.  See 7

CFR § 46.2 (dd)(1).  We therefore find Respondent accepted the subject loads of

tomatoes.

A buyer who accepts produce becomes liable to the seller for the full purchase

price thereof, less any damages resulting from any breach of contract by the seller.

Ocean Breeze Export, Inc. v. Rialto Distributing, Inc., 60 Agric. Dec. 840 (2001); World

Wide Imp-Ex, Inc. v. Jerome Brokerage Dist. Co., 47 Agric. Dec. 353, 355 (1988);

Jerome M. Matthews v. Quong Yuen Shing & Co., 46 Agric. Dec. 1681, 1683 (1987).

Where goods are accepted, the buyer has the burden of proof to establish a breach of

contract.  See U.C.C. § 2-607(4).  See, also, The Grower-Shipper Potato Co. v.

Southwestern Produce Co., 28 Agric. Dec. 511 (1969).  The burden therefore rests with

Respondent to prove Complainant breached the contract by shipping tomatoes that were

not 85 percent U.S. No. 1.

In this regard, we note Respondent appears to be under the misconception that the

contracts obligated Complainant to ship tomatoes that met 85 percent U.S. No. 1

requirements at the time of delivery.  The record shows, however, that the tomatoes were

sold under f.o.b. terms.  (ROI Ex. A2, A3, G3, G9.)  Where tomatoes are sold 85 percent

U.S. No. 1 f.o.b., the seller warrants that the tomatoes are 85 percent U.S. No. 1 quality at

shipping point, and that they are in suitable shipping condition to arrive without abnormal

deterioration at the contract destination agreed upon between the parties.[3]

---

[3] The Regulations (7 CFR § 46.43(i)) define f.o.b. as meaning, "… that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, *in suitable shipping condition…*, and that the buyer assumes all risk of damage and delay in transit not caused by the seller irrespective of how the shipment is billed."  (Emphasis added.)

Respondent submitted a number of USDA inspection certificates purportedly showing a breach of contract on the part of Complainant. All of the inspections in question are destination inspections that were performed either at the Hunts Point Terminal Market, in Bronx, New York, or at M & M Packaging, in Goshen, New York. The tomatoes billed on invoice 18243 were subjected to a total of four inspections, including two standard grade and condition inspections, an appeal inspection, and a formal review. (ROI Ex. H5, H7-H9.) To determine whether the tomatoes billed on this invoice met the contract requirements, only the results of the formal review will be considered, as it represents the most comprehensive evaluation of the quality and condition of the tomatoes. The formal review disclosed 20 percent average defects, including 6 percent quality defects, 10 percent sunken discolored areas, 1 percent bruising, and 3 percent decay, in the tomatoes. (ROI Ex. H8.) For the tomatoes billed on invoice 18244, only one inspection was performed, and that inspection disclosed 20 percent average defects, including 6 percent quality defects, 6 percent sunken discolored areas, 3 percent shoulder bruises, 1 percent bruising, 1 percent skin checks, and 3 percent decay, in the tomatoes. (ROI Ex. H6.)

Tomatoes carrying the grade designation 85 percent U.S. No. 1 may have no more than 15 percent quality defects at shipping point. Homestead Tomato Packing Co., Inc. v. Tray-Wrap, Inc., 46 Agric. Dec. 643. As quality defects are permanent, i.e., they do not worsen in transit, a destination inspection showing quality defects in excess of 15 percent would establish a breach of contract by Complainant. The quality defects disclosed by the inspections of the tomatoes in question do not, however, exceed 15 percent.

As we mentioned, under the f.o.b. terms of sale, Complainant also warranted the tomatoes were in suitable shipping condition to arrive at the contract destination without abnormal deterioration. The Regulations (7 CFR § 46.43(j)) define suitable shipping condition as meaning:

> ... that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the contract destination agreed upon between the parties.[4]

Neither party has claimed any abnormality in the transportation service, so we assume the transportation service and conditions were normal.

To determine whether the tomatoes in question were in suitable shipping condition, we refer first to the defect tolerances set forth in the U.S. Standards for Grades of Fresh Tomatoes. We will start with the tolerances set forth in the U.S. Grade Standards for U.S. No. 1 tomatoes, as the standards do not include tolerances for

---

[4] The suitable shipping condition provisions of the Regulations (7 CFR § 46.43(j)) which require delivery to contract destination "without *abnormal* deterioration" (emphasis added), or what is elsewhere called "good delivery" (7 CFR § 46.44), are based upon case law predating the adoption of the Regulations. See Williston, *Sales* § 245 (rev. ed. 1948). Under the rule it is not enough that a commodity sold f.o.b., U.S. No. 1, actually be U.S. No. 1 at time of shipment. It must also be in such a condition at the time of shipment that it will make good delivery at contract destination. It is, of course, possible for a commodity that grades U.S. No. 1 at the time of shipment, and is shipped under normal transportation service and conditions, to fail to make good delivery at destination due to age or other inherent defects which were not present, or were not present in sufficient degree to be cognizable by the federal inspector, at shipping point. Conversely, since the inherently perishable nature of commodities subject to the Act dictates that a commodity cannot remain forever in the same condition, the application of the good delivery concept requires that we allow for a "normal" amount of deterioration. This means that it is entirely possible for a commodity sold f.o.b. under a U.S. grade description to fail, at destination, to meet the published tolerances of that grade, and thus fail to grade at destination, and nevertheless make good delivery. This is true because under the f.o.b. terms the grade description applies only at shipping point, and the applicable warranty is only that the commodity thus sold will reach contract destination without abnormal deterioration, not that it will meet the grade description at destination. If the latter result is desired then the parties should effect a delivered sale rather than an f.o.b. sale. For all commodities other than lettuce (for which specific good delivery standards have been promulgated) what is "normal" or abnormal deterioration is judicially determined. See Pinnacle Produce, Ltd. v. Produce Products, Inc., 46 Agric. Dec. 1155 (1987); G & S Produce v. Morris Produce, 31 Agric. Dec. 1167 (1972); Lake Fruit Co. v. Jackson, 18 Agric. Dec. 140 (1959); and Haines Assn. v. Robinson & Gentile, 10 Agric. Dec. 968 (1951).

tomatoes that are only 85 percent U.S. No. 1 quality.  For U.S. No. 1 tomatoes, the U.S. Grade Standards provide a tolerance, at shipping point, of 10 percent for tomatoes in any lot that fail to meet the requirements of the grade, including therein not more than five percent for defects causing very serious damage and one percent for soft and decay.  For defects en route or at destination, the U.S. Grade Standards provide a tolerance of 15 percent for tomatoes that fail to meet the requirements of the grade, including therein not more than five percent for tomatoes that are soft or affected by decay, five percent for tomatoes that are very seriously damaged by any cause (exclusive of soft or decay), 10 percent for tomatoes that are damaged by shoulder bruises or by discolored or sunken scars on any parts of the tomatoes ("sunken discolored areas"), and 10 percent for tomatoes that are otherwise defective.[5]

For tomatoes sold f.o.b., we typically apply additional allowances to the tolerances set forth in the U.S. Grade Standards to allow for normal deterioration in transit.  The maximum allowances, for a shipment in transit for five days, are 20 percent for average defects, including not more than eight percent for tomatoes that are soft or affected by decay, eight percent for defects causing very serious damage (exclusive of soft or decay), 15 percent for damage by sunken discolored areas, and 15 percent for other defects.  For a similar transit period, we have held that tomatoes sold as 85 percent U.S. No. 1 may have no more than 25 percent average defects, including not more than eight percent soft or decay, eight percent very serious damage (exclusive of soft or decay), 18 percent damage by sunken discolored areas, and 18 percent other defects.  The Produce Exchange, Inc. v. Tom Lange Co., Inc., 42 Agric. Dec. 1588, 1592 (1983).

---

[5] See 7 CFR § 51.1861.

As we stated, the allowances just mentioned are for tomatoes in transit for five days. The tomatoes in question were in transit for only two days. Under such circumstances, we typically allow only 17 percent for average defects, including not more than six percent soft or decay, six percent very serious damage (exclusive of soft or decay), 11 percent damage by sunken discolored areas, and 11 percent other defects. Applying a similar reduction to the five-day allowances for 85 percent U.S. No. 1 tomatoes, we arrive at two-day allowances for 85 percent U.S. No. 1 tomatoes of 22 percent for average defects, including not more than six percent soft or decay, six percent very serious damage (exclusive of soft or decay), 14 percent damage by sunken discolored areas, and 14 percent other defects.

For the tomatoes billed on invoice 18243, the USDA inspection secured by Respondent disclosed 20 percent average defects, including 3 percent soft and decay, 0 percent very serious damage (exclusive of soft and decay), 10 percent sunken discolored areas, and 10 percent other defects. As these percentages do not exceed the allowances just mentioned, Respondent has failed to establish a breach of contract with respect to the tomatoes billed on invoice 18243. For the tomatoes billed on invoice 18244, the USDA inspection secured by Respondent disclosed 20 percent average defects, including 3 percent soft and decay, 1 percent very serious damage (exclusive of soft and decay), 6 percent sunken discolored areas, and 14 percent other defects. These percentages also do not exceed the aforementioned allowances. Therefore, Respondent has also failed to establish a breach of contract with respect to the tomatoes billed on invoice 18244.

Having failed to establish a breach of contract by Complainant with respect to either of the truckloads of tomatoes at issue in this dispute, Respondent is liable to

Complainant for the tomatoes it accepted at the full purchase prices thereof, which total $30,880.00. Respondent's failure to pay Complainant $30,880.00 is a violation of Section 2 of the Act for which reparation should be awarded to Complainant. Section 5(a) of the Act requires that we award to the person or persons injured by a violation of Section 2 of the Act "the full amount of damages sustained in consequence of such violations." Such damages include interest. Louisville & Nashville Railroad Co. v. Sloss Sheffield Co., 269 U.S. 217, 239 (1925); Louisville & Nashville Railroad Co. v. Ohio Valley Tie Co., 242 U.S. 288, 291 (1916). Since the Secretary is charged with the duty of awarding damages, he/she also has the duty, where appropriate, to award interest. See Pearl Grange Fruit Exchange, Inc. v. Mark Bernstein Co., Inc., 29 Agric. Dec. 978, 979 (1970); John W. Scherer v. Manhattan Pickle Co., 29 Agric. Dec. 335, 339 (1970); and W.D. Crockett v. Producers Marketing Association, Inc., 22 Agric. Dec. 66, 67 (1963). The interest that is to be applied shall be determined in accordance with 28 U.S.C. § 1961, i.e., the interest rate shall be calculated at a rate equal to the weekly average one-year constant maturity treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the Order. PGB International, LLC v. Bayche Companies, Inc., Order on Reconsideration, 65 Agric. Dec. 669, 672-673 (2006).

Complainant in this action paid $500.00 to file its formal complaint. Pursuant to 7 U.S.C. subsection 499e(a), the party found to have violated section 2 of the Act is liable for any handling fees paid by the injured party.

## Order

Within 30 days from the date of this Order, Respondent shall pay Complainant as reparation $30,880.00, with interest thereon at the rate of  0.31      % per annum from August 1, 2008, until paid, plus the amount of $500.00.

Copies of this Order shall be served upon the parties.

Done at Washington, DC

July 15, 2010
/s/ William G. Jenson

William G. Jenson
Judicial Officer
Office of the Secretary

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MISTER SPROUT, INC.

                     Petitioner           NOTICE OF APPEAL


       -against-

                                   Civil Action No.

WILLIAMS FARMS PRODUCE SALES, INC.
                    Respondent

-----------------------------------------------------------X

      Notice is hereby given that Mister Sprout, Inc, petitioner in an action before the

United States Department of Agriculture, hereby appeals to the United States District Court,

Southern District of New York, from the order of the Secretary of Agriculture in the matter

of <u>Williams Farms Produce Sales, Inc. v. Mister Sprout, Inc.</u>, PACA E-08-520, Docket No.

R-09-082, dated July 15, 2010, by William G. Jenson, Judicial Officer, a copy of which is

annexed hereto and made part hereof as an Exhibit.

Dated:    August 9, 2010


                                LINDA STRUMPF, ESQ. 2948
                                Attorney for Petitioner
                                2 West Road
                                South Salem, NY 10590
                                (212) 566-6800



TO: Williams Farms Produce Sales, Inc
     7622 Ashton Road
     Islandton, South Carolina 29929-2709

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MISTER SPROUT, INC.

                              Petitioner         PETITION


              -against-
                                        Civil Action No.
WILLIAMS FARMS PRODUCE SALES, INC.
                              Respondent     Plaintiff Demands a Jury Trial
-------------------------------------------------------------X

Petitioner Mister Sprout, Inc. ("Sprout") by its attorney LINDA STRUMPF, Esq., as

and for its Petition herein alleges:

1.   That it was the Respondent in a reparation proceeding under the Perishable

Agricultural Commodities Act, 1930, as amended (7 U.S.C. Sec. 499 et seq.), namely

Williams Farms Produce Sales, Inc. v. Mister Sprout, Inc., PACA E-08-520, Docket No. R-

09-082, dated July 15, 2010, before the Secretary of Agriculture, United States Department

of Agriculture, by William G. Jenson, Judicial Officer. Sprout has its principal place of

business at B266 N.Y.C. Terminal Market, Bronx, New York, within the jurisdiction of this

Court.

2.   A timely complaint was filed in which Williams Farms Produce Sales, Inc.

("Williams") sought a reparation award against Sprout in the total amount of $30,880.00 in

connection with the sale and shipment of two truckloads of tomatoes shipped in the course of

interstate commerce.

3.   A copy of the complaint was served upon Sprout, who filed an answer thereto

1

denying the material allegations of the complaint.

4. The shortened method of procedure provided in section 47.20 of the Rules of Practice (7. C.F.R. § 47.20) was applied. Pursuant to this procedure, the pleadings of the parties, and the U.S.D.A.'s report of investigation were considered part of the evidence in the case. In addition, Williams filed an Opening Statement, Statement in Reply and a Brief, and Sprout filed an Answering Statement and a Brief.

5. A Decision and Order was issued on July 15, 2010 awarding reparation to Williams in the amount of $30,880.00 with interest thereon at the rate of .31% per annum from August 1, 2008, plus the amount of $500.00 (the handling fee). (A copy of the Decision and Order is annexed hereto and made a part hereof as Exhibit A).

6. The U.S.D.A. held that because the tomatoes were sold f.o.b., they applied additional allowances to the tolerances set forth in the U.S. Standards for Grades of Fresh Tomatoes. The U.S.D.A. allowed 22 percent average defects, although the tomatoes were contracted to meet 85% U.S. No. 1. Thus, although the USDA inspections on the loads disclosed average defects in excess of 15%, the Judicial Officer found that the loads met the grade contracted for in both shipments, and that Respondent failed to establish a breach of contract for both loads.

7. The grounds on which Sprout relies that the Decision and Order of the U.S.D.A. should be overturned are that it is incorrect as to the facts and as to the law.

2

WHEREFORE, it is respectfully requested that the reparation order of the Secretary of Agriculture awarding $30,880.00 with interest thereon at the rate of .31% per annum from August 1, 2008 plus the amount of $500.00 be reversed in its entirety; that Sprout be awarded the costs, disbursements and attorney's fees of this action, together with such other and further relief as is just and proper.

Dated: August 9, 2010
South Salem, NY

LINDA STRUMPF, ESQ. 2948
Attorney for Petitioner
2 West Road
South Salem, NY 10590
(212) 566-6800

TO:   Williams Farms Produce Sales, Inc
      7622 Ashton Road
      Islandton, South Carolina 29929-2709

3